IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

EZRA JOE JONES PLAINTIFF

v. Civil No. 09-5044

SHERIFF TIM HELDER,
ET AL. DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Ezra Joe Jones (hereinafter Jones) filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Jones is currently incarcerated in the Texarkana Regional Correction Center, a unit of the Arkansas Department of Correction (ADC) in Texarkana, Arkansas. The events at issue in this lawsuit occurred while Jones was incarcerated at the Washington County Detention Center (WCDC) on four separate occasions from January of 2008 until April 2009. Jones maintains the Defendants violated his constitutional rights by failing to provide him with an adequate diet and by not having an adequate grievance procedure.

A summary judgment motion has been filed by the Washington County Defendants, Sheriff Tim Helder and Former Sheriff Keith Whitmill (Doc. 36). A summary judgment motion was also filed on behalf of the ARAMARK Correction Services, LLC (hereinafter ARAMARK)(Doc. 42). Plaintiff filed two consolidated responses (Doc. 41 & Doc. 51) to the motions. The motions are now ready for decision.



AO72A
(Rev. 8/82)

**1. Background**

Jones was incarcerated at the WCDC on four separate occasions: January 6, 2008 to April 14, 2008; June 7, 2008, to August 5, 2008; October 2, 2008, to October 5, 2008; and December 8, 2008, to April 6, 2009. Plaintiff's Response (Doc. 51)(hereinafter Resp.) at ¶¶ 1, 5, 6, 9, 10. On February 25, 2009, Jones, after a guilty plea, was sentenced to 288 months in the ADC. Id. at ¶ 21.

ARAMARK is a private food service provider under contract, during the relevant time period, to provide meals to the inmates at the WCDC. Jones is hypoglycemic and was initially placed on a diabetic diet pursuant to the orders of the jail medical doctor. Resp. at ¶¶ 2 & 3. When Jones voiced complaints to the jail nurse about the meals being served, instead of examining the trays actually being served to the inmates, the nurse merely looked at what the menu stated and indicated ARAMARK was in charge of the trays. Id. at ¶ 4.

On June 30, 2008, Jones complained that the food portions were inadequate and did not meet the dietary minimums. Resp. at ¶ 7. In response, Jones was told that his measurements of the serving sizes were completely inaccurate. Id. He was told to feel free to get a trustee job in the kitchen so he could witness for himself the portion controls used. Id. Jones indicates he did get a job in the kitchen and witnessed the provision of less than the portion size specified on the menu. Id. For instance, Jones states they were being served six ounces when the menu called for a ten ounce serving. Id.

On December 19, 2008, Jones complained that no fruit was served with breakfast. Resp. at ¶ 12. He asserted this was in violation of the minimum feeding requirements of the United



AO72A
(Rev. 8/82)

States Department of Agriculture (USDA). Id. Jail personnel responded that the approved menu did not call for fruit to be served with breakfast that day. Id.

On February 2, 2009, Jones made the following complaints about the meals served: the food did not meet minimum USDA standards; the food served was not equal to the portion sizes approved by the dietician; drinks and meals were watered down; substitutions were not being made; protein was not served every meal as specified by the approved menu; and no milk was served with breakfast on certain days. Resp. at ¶¶ 16, 17. Jones also complained that it was a conflict of interest to have the same company administer commissary and food in the jail because the less the inmates were fed, the more a detainee would spend on commissary. Id. at ¶ 17. To Jones' various complaints, jail personnel responded that a dietician makes up all menus for ARAMARK, fruit and protein were not served with every meal, water was not served, and ARAMARK decided the menu. Id. at ¶¶ 17, 20, 22.

Jones indicates he experienced some diarrhea but the nurse maintained it was due to stress and not the food he was served. Resp. at ¶¶ 7(E) & 7(F). He also complained that due to the lack of necessary nutrients, he had joint pain, soreness in his muscles, and migraines. Id. at ¶ 17.

He did not see a doctor for these complaints. Id. at ¶ 17(B). He states that from previous encounters with the jail medical staff he believed it would be useless. Doc. 41 at pg. 3. He states the medical staff avoided providing services. Id. at pg. 4.

On February 17, 2009, Jones complained that he had not received responses to numerous requests and grievances. Resp. at ¶ 19(A). He indicates jail personnel knew he was going to file a lawsuit and denied him the paperwork needed to show to the Court. Id. at ¶ 19(C).



AO72A
(Rev. 8/82)

Jones never spoke to, or communicated directly with, Sheriff Helder. Resp. at ¶ 25(A). However, Jones indicates he did write Sheriff Helder on February 2, 2009, but received no response. Id. at ¶¶ 17 & 25(A). Jones believes Sheriff Helder should have taken action after being informed the inmates were not being fed properly. Id. at ¶ 26. Jones maintains WCDC staff attempted to deny or shift blame to ARAMARK and never actually addressed the issues raised with respect to the food served. Id. at ¶ 28(A). With respect to ARAMARK, Jones asserts they do not even provide their kitchen staff with a copy of the approved menu, only what the ARAMARK supervisor, Steven Pennington, provides them daily. Id. at ¶ 28(B).

Jones also maintains that the food purchases when compared to the daily detainee counts show "beyond doubt" that the "approved menu" could not be followed. Doc. 41 at pg. 3. He states the simple fact is that there was not enough food ordered to feed all the detainees an adequate diet. Id. at pgs. 3 & 5. Jones has attached copies of approved weekly menus, records containing the daily count of inmates, and invoices for food purchases made by ARAMARK for the WCDC.

**2. Applicable Standard**

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. See Celotex v. Catrett, 477 U.S. 317, 324 (1986).



AO72A
(Rev. 8/82)

**3. Arguments of the Parties**

The Washington County Defendants first contend they have been sued in their official capacities only and Jones' claims fail as a matter of law because there is no evidence of an unconstitutional Washington County custom or policy. Second, they argue detainees are provided with an adequate diet. Third, they maintain there is no constitutional right to have grievances answered. Fourth, they maintain negligence is not actionable under § 1983. Finally, they maintain Jones suffered no actual physical injury.

The ARAMARK Defendants first assert that the Eighth Amendment and § 1983 claims do not apply to them. In this regard, the ARAMARK Defendants assert they are private actors under contract with the WCDC to provide food service to inmates and that none of the named ARAMARK employees are prison officials or persons to whom penal responsibilities are delegated. Second, the ARAMARK Defendants maintain Jones' allegations, even if true, are too insignificant to constitute a deprivation of Jones' rights. Finally, they argue there is no evidence that Jones suffered an actual, physical injury, of a kind that is required to establish a violation of an inmate's constitutional right to nutritionally adequate meals.

In opposition, Jones maintains that the meals actually served did not provide a diet sufficient to maintain his health. He asserts portion control was virtually non-existent and the food was nutritionally inadequate. While he has no medical evidence, Jones asserts his health was impacted in several ways including joint pain, a deep ache in his bones, soreness of his muscles, and migraines.



AO72A
(Rev. 8/82)

**4. Discussion**

I will address each argument in turn.

**(A). Official versus Individual Capacity Claims**

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. West v. Atkins, 487 U.S. 42 (1988); Dunham v. Wadley, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986).

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In Gorman v. Bartch, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

Gorman, 152 F.3d at 914.



AO72A
(Rev. 8/82)

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989); see also Andrus v. Arkansas, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability).

In this case, Jones is proceeding *pro se*. He has indicated he was unaware of the distinction between individual and official capacity claims when he filed this lawsuit. See (Doc. 41) at pgs. 4-5; Resp. at ¶ 27. However, now that he is aware of the distinction, he indicates he is asserting claims against the Defendants in both capacities. Id. Given that the distinction is difficult for even those with legal training to understand, see e.g., Vanhorn v. Oelschlager, 502 F.3d 775, 779 (8th Cir. 2007)(state officials misconstrued the differences between official and individual capacity claims and the immunities available), I believe the complaint should be construed as asserting both individual and official capacity claims.

With respect to the Washington County Defendants' argument that there is no evidence of a custom, policy, or practice on their part, I disagree. Under Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978), Washington County may be held liable under § 1983 if one of its customs or policies caused the violation of Jones' rights. Here, the Washington County Sheriff contractually delegated his authority, and constitutional obligation, to provide inmates with adequate nutrition. Grievances regarding problems with the food service or complaints that the food was inadequate were not investigated by jail personnel. Clearly, with respect to food service, the Washington County Defendants allowed ARAMARK full discretion in this regard. This creates a genuine issue of material fact as to whether Washington County



AO72A
(Rev. 8/82)

exhibited deliberate indifference to the known or obvious consequences of this practice or custom.

**(B). State Action**

In Price v. Suarez, No. 1:09-cv-0051, 2011 WL 635225 (D. Utah Feb. 11, 2011), the court addressed the argument, identical to the one made by ARAMARK, that a contracted food service provider for a detention facility could not be held liable because it was not a state actor. The court rejected this argument stating:

> Section 1983 applies only to people acting under the color of state law. 42 U.S.C. § 1983. But "[i]f a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, 'that conduct [is] also action under color of state law and will support a suit under § 1983.' " *West v. Atkins,* 487 U.S. 42, 49 (1988) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 (1982)). "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.' " *West,* 487 U.S. at 49 (citations omitted). In order for Compass to be liable under § 1983, it must be a state actor.
>
> In *West,* the Supreme Court held that a physician who was under contract to provide medical services to inmates at a state prison was a state actor for purposes of § 1983. *Id.* at 57. Because of the physician's "function within the state system," and not "the precise terms of his employment ... his actions [could] fairly be attributable to the State." *Id.* at 55-56. The fact that the State contracted out prison medical care did not "relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it [did] not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *Id.* at 56. "The State bore an affirmative obligation to provide adequate medical care to [its prisoners]; the State delegated that function to [the physician] Atkins; and [the physician] voluntarily assumed that obligation by contract." *Id.*
>
> Here, the Jail contracted out to Compass the exclusive right to provide and operate food services for the inmates and staff of the Jail. The State, and therefore the Jail, had a constitutional obligation to provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Ramos v. Lamm,* 639 F.2d 559, 570-71 (10th Cir.1980). The Jail delegated that obligation to Compass, and Compass voluntarily assumed the obligation by



AO72A
(Rev. 8/82)

> contract. Compass's provision of food to the inmates was state action, and Compass therefore acted under of color of state law for purposes of § 1983.

Id., 2011 WL 635225 at 3.

The situation is the same in this case. ARAMARK has assumed the obligation to provide a nutritionally adequate diet to the inmates of the WCDC.

**(C). Inadequate Diet**

In this circuit, the Eighth Amendment deliberate indifference standard is applied to all claims of unconstitutional conditions of confinement whether the individual involved is a pretrial detainee or a convicted inmate. Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006). The Eighth Amendment's prohibition against cruel and unusual punishment is violated if an inmate is not provided with meals adequate to maintain his health. See e.g., Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996); Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992)(prisoners have a right to nutritionally adequate food); Campbell v. Cauthron, 623 F.2d 503, 508 (8th Cir. 1980)(prisoners are guaranteed a reasonably adequate diet). To prevail on an Eighth Amendment claim, Jones must show the Defendants were deliberately indifferent to his dietary needs. Wishon v. Gammon, 978 F.2d 446 (8th Cir. 1992).

Merely because the food served is not prepared to an inmate's taste does not implicate the Eighth Amendment. Rather, the Eighth Amendment is only violated if the food provided is inadequate to maintain good health. See e.g., Burgin v. Nix, 899 F.2d 733, 734-35 (8th Cir. 1990)(inmates do not have a right to be served a particular type of food); see also Wilson v. Seiter, 501 U.S. 294, 298 (1991)(the deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities).



AO72A
(Rev. 8/82)

In this case, I believe there are genuine issues of material fact that preclude summary judgment in Defendants' favor. It is undisputed that the dietician approved menu meets caloric guidelines and provides a variety of foods based on the USDA Food Guide Pyramid. However, there is nothing before the Court to suggest what steps are utilized to ensure the meals served at the WCDC follow the approved menu or to maintain portion control. The ARAMARK Defendants have provided no affidavits or other evidence regarding the preparation of the meals served at the WCDC, the menu used, variations from the menu, or the maintenance of a uniform serving size.

**(D). The Physical Injury Requirement**

Codified as 42 U.S.C. § 1997e(e), section 803(d) of the Prison Litigation Reform Act of 1996 (PLRA) provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." See also Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004)(the physical injury requirement of the PLRA "limit[ed] recovery for mental or emotional injury in all federal actions brought by prisoners.").Section 1997e(e), however, does not bar the recovery of other types of relief such as nominal damages, punitive damages, and injunctive and declaratory relief. Id.

Diarrhea, vomiting, cramps, nausea, and headaches have been held to be insufficient to satisfy the physical injury requirement of the PLRA. See e.g., Alexander v. Tippah County, Miss. 351 F.3d 626, 631 (5th Cir. 2003); Watkins v. Trinity Serv. Group. Inc., Case No. 8:05-cv-1142, 2006 WL 3408176, *4 (M.D. Fla. Nov. 27, 2006); Pratt c. Corrections Corp. of America, 2006 WL 2375656, *5 (D. Minn. Aug. 16, 2006)(loss of thirty pounds over a nine month period



AO72A
(Rev. 8/82)

insufficient). I agree that Jones' complaints of diarrhea, joint pain, muscle soreness, and migraines are insufficient to establish a physical injury under § 1997(e). However, as noted above, that only precludes Jones from recovering compensatory damages.

Aside from the limitation on damages provision contained in the PLRA, ARAMARK argues there is a separate Eighth Amendment requirement that Jones must present evidence he suffered an actual, physical injury, as a result of not receiving nutritionally adequate meals. In short, they maintain Jones must establish a physical injury that is more than *de minimis* to prevail on his claim that his diet was inadequate.

Here, Jones has alleged he suffered from diarrhea, joint pain, soreness in his muscles, and migraines. Resp. at ¶¶ 7(F) & 17. He sought medical care only for diarrhea and was told it was caused by stress. He sought no medical care for the joint pain, muscle soreness or migraines. Despite the lack of medical evidence, I believe that Jones has sufficiently alleged the existence of adverse health effects as a result of the diet he received.

**(E). Inadequate Grievance Procedure**

Jones contends his grievances were not handled properly, he did not always get responses, and he did not get copies of the grievances he did submit. Supplement to the Complaint (Doc. 9) & Resp. at ¶ 19. However, he has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures. He makes no argument that he was treated differently from other similarly situated prisoners, that his grievances were ignored because of his exercise of his constitutional rights, or that his ability to exercise any specific constitutional right was chilled by Defendants' actions.

"Inmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)(citations omitted). See also Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)(inmates have no constitutional right to grievance procedure); Blagman v. White, 112 F. Supp. 2d 534 (E.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure), aff'd, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." Blagman, 112 F. Supp. 2d at 542 (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." Id. (citation omitted). "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).

**5. Conclusion**

For the reasons stated, I recommend the motions for summary judgment (Doc. 36 & Doc. 42) should be granted in part and denied in part as follows: (1) the Washington County Defendants should be granted summary judgment on the inadequate grievance procedure claim; (2) all Defendants should be granted summary judgment on Jones' claims for compensatory damages; (3) in all other respects, the motions should be denied.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file**



AO72A
(Rev. 8/82)

**timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th day of March 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE



AO72A
(Rev. 8/82)